The next case for oral argument is the United States v. Slinkard. It is a stock at 23-5071, my name is Kathleen Shen, and I represent the appellate, Mr. Joshua Slinkard. It's not disputed here that the District Court clearly erred by finding that Mr. Slinkard used a computer to show SS pornography and that it applied the two-level computer use enhancement in error. The only question is whether the government can meet its burden of proving that this government expressly relied upon the error to argue that a life sentence was appropriate and that no variance should be granted. Contrary to the government's statement, in its questions presented, there was an express variance request at the sentencing record, Volume 2, 78-79. So I just want to emphasize that this isn't a throwaway comment or reference, but actually a significant part of the government's argument against the variance is that the unadjusted total offense level is 48, which of course is due to these erroneously added two levels. That advocacy directly links the sentence here to the clear error. And so because of that, because the government considered these two levels important to its argument against the variance and the District Court accepted that argument and denied the variance, it can't meet its burden of showing harmlessness here. This Court can't be confident that the error had no impact on the sentence. Are there any cases like that where it's been well above 43 and adjusted down and the Court sentences as it does, and then it turns out two levels shouldn't have been added, and so therefore we remand? It stays the same guideline calculation. Yeah, I agree the guideline range remains the same. And isn't it normally the case that when the guideline range stays the same, that's good enough for us? I agree that it often is the case that there's no prejudice from a guideline error that doesn't affect the guideline range, but I think this case is different because in those cases, and I read a bunch of those cases where you find that there's no prejudice because there's no guideline error in what this Court says. For example, in the case United States v. Serrano, 742 Federal 3rd 461, is that the argument for the sentence, the 3553A argument, would have been the same regardless of the error in the guidelines, but that's not the case here. This is a case where the government's argument against the variance before the life sentence directly connected that sentence to the error. And I would also like to emphasize for this Court that it's really not unusual for there to be procedural sentencing error that doesn't affect the guidelines, but still results in a remand for resentencing. For example, if there were a Taffia error and there was an improper consideration, for example, of the need for rehabilitation, or if the District Court erroneously concluded it couldn't consider an appropriate factor like family circumstances or post-conviction rehabilitation, none of those errors affect the guideline range, but it's still the case that because there's a connection between the error and the sentence, if we can show that that was part of the sentencing decision, there can still be prejudice warranting resentencing. So, is there a case or not? I'm not aware of a case like that. But again, I would point this Court to all of these cases in which we do remand for procedural sentencing error regardless of the lack of impact on the guidelines. And in a way, I don't think this is truly a guidelines case. Of course, the District Court's error is clearly an erroneous finding. In other circumstances, it would have affected the guidelines, but it's still an error that was injected into the sentencing by the government through its passionate argument against Averius. Counsel, you're focusing on the error being injected by the government's argument, but I'm looking at what the Court's findings were for determination of a sentence. And I don't see where the Court, in making its 3553A factor analysis, discussed this two-level enhancement at all or even hinted at it. In fact, the Court relied upon other facts and history and characteristics of the defendant in making the sentence determination. So, how can we, in assessing here whether or not a remand is appropriate, why should we be focused more on what the Court decided and the findings that were made compared to what the government was arguing? Your Honor, it's true that the District Court didn't explain or didn't refer expressly to the government's arguments in denying Averius. It did, however, it agreed with the government and it ultimately denied Mr. Slinkard's sentencing request. So, I think that supports the idea that this was part of the consideration. And I would also say that this isn't a case either where the District Court expressly disclaimed reliance on the error, for example. It's not a case where the District Court made clear it wasn't affected by the government's arguments. And even in those cases, for example, in Archuleta, which is a plain guideline error case, so it's a different situation, but there, the District Court, or this Court reversed for resentencing, even though the District Court seemed to say, that one level didn't matter to me, I would give the same sentence regardless. This Court said, you know, we just don't know that, we're not sure that that's actually the case, and so we're going to send it back for resentencing. And I think that I did get a different sentence on remand, notwithstanding what the District Court said. So, ordinarily, under these circumstances, we just can't be sure that this argument didn't affect the District Court's sentence. And I would also like to proceed, just mention the second error. So, you know, the government doesn't really dispute that the District Court mischaracterized Mr. Slinkard's criminal history when it described him as somebody with two prior convictions related to the sexual abuse of children. And that is a statement that's clearly and obviously wrong in two significant ways. Of course, first, Mr. Slinkard had no criminal history at the time of offense, so he did not have any prior convictions, as that term is used at sentencing. And second, one of those other convictions is for exactly the same conduct, and so there would be no reason for the District Court to mention it as a basis for imposing a life sentence at all. It's, of course, not aggravating that the state previously convicted him for the exact same conduct due to a quirk of legal history. And I think this misunderstanding of Mr. Slinkard's history is something that did affect his substantial rights, just because it's so aggravating. Of course, if it were true that Mr. Slinkard had committed this underlying child sex offense after sustaining and being convicted for two prior child sex offenses, that would be very powerful evidence that— But don't we know the District Court knew differently? It was a stray comment. The District Court calculated the criminal history correctly. Your Honor, I don't think we know that because, you know, again, I think the plain meaning of this in the context of what the under—this offense is referring to prior convictions. And I think that the way it comes up when he says, I'm imposing a life sentence, you know, the District Court doesn't provide a very thorough explanation of its decision to impose a life sentence. It mentions, of course, the offense conduct, which is egregious, but he also talks about marijuana use and a post-traumatic stress disorder. And then he says, and this is someone with two prior convictions related to child sex abuse. And in that context, that statement does a lot of work to explain why Mr. Slinkard is someone who should get a life sentence. It wouldn't make sense to talk about two other convictions, you know, unless it were the case that the District Court thought that was particularly aggravating. And, of course, it would be— The District Court sentenced to the guideline range. Yes, Your Honor, it denied the variance. And we presume that that's reasonable. Your Honor, I actually wish I had caught this. That's not a presumption this Court makes in the procedural sentencing context. That is a presumption that applies only when the claim is one of substantive reasonableness, when the claim is that this is a sentence that's just too long. And that's not the claim here. Our claim is that this District Court made two errors. And I agree with what you just said. But going forward to where we are in the proceeding when the District Court made that comment, he's determining how many months, right? And he says life. Yes. And he calculates the criminal history correctly, even though he said prior convictions. That's more than offset by his having calculated and knowing what was prior and what wasn't prior before he imposed the sentence. Your Honor, I think what you're suggesting is that, you know, we can assume that even though what the District Court said is inconsistent or just wrong, he must have misspoke. What I say is let's consider everything the District Court said, not just that stray comment, but instead really the meat and potatoes of it when he goes to the criminal history and is more precise rather than just a line of seizures. Your Honor, I don't think that's the correct analysis. I think what this Court does is it says this statement is a question about whether the District Court really understood whether this was Mr. Sinkard's criminal history or not. That actually goes to prejudice. And for that, I would point this Court to its decision in United States v. Smith, 755 Federal Appendix 808. And I'm happy to submit this through a 28-J letter. And there, this Court reversed and remanded for resentencing, where in pronouncing the sentence, the District Court misstated the sentencing guidelines range. She said 235 to 240 months instead of 210 to 240 months. And this Court said, you know, that's clearly not the guidelines range. And we don't know whether the District Court just misspoke or whether she actually misunderstood. And since we don't know what happened, we're sending it back. And I would submit in this case, particularly because this is such a potentially aggravating misunderstanding of Mr. Sinkard's criminal history, I think that finally, I just want to touch on two sort of ideas that I think could be floating around about this case. First, the government, especially in its brief, seems to say, of course, Mr. Sinkard is getting life. He would never get anything but life. This is a terrible offense. There's no point in sending this back. And of course, it's certainly possible he would get life. I can't deny that. This is the kind of case where a life sentence is a possibility or even likely. But contrary to what the government says, it's also a real possibility that somebody like Mr. Sinkard gets a term of years. This Court has already recognized that in Sinkard 1, where it recognized that Mr. Sinkard's state court sentence for essentially the same misconduct was 30 years. Somebody looked at this exact crime and said he doesn't have to spend the rest of his life in prison. And common sense and experience tell us that it is, in fact, not unusual for individuals who plead guilty to aggregated sexual abuse to receive various sentences to a term of years, even when the advisory guideline recommendation is life, which it very often is for these kinds of cases that's supported by the Sentencing Commission data and just common sense. Of course, if it were the case that every time the guidelines said someone would get life, there would be no reason for someone to plead guilty. You would always go to trial. But we know that often people plead guilty and do get a term of years. And I would also just like to point out that Mr. Sinkard is going to be serving a significant additional time no matter what, just because this federal sentence is being imposed 10 years after he started his state sentence. So that's also something that could be weighed or that could be considered. I think there's a lot of reasons why a court could give Mr. Sinkard a term of years. And given these clear and plain errors, this court can't be confident that that is the same sentence he would get regardless. And so I therefore respectfully request this court vacate his sentence and remand him for resentencing. Thank you. May it please the Court, Thomas Duncan for the United States. There are two lines of cases that Mr. Sinkard conflates in his brief. There's one line of cases where there's a sentencing calculation error that affects the guidelines range. And then another line of cases involving a calculation error that doesn't affect the guidelines range. And with a calculation error that affects the guidelines range, the government has to point to evidence in the record showing that the court would have imposed the same sentence nonetheless. That's the line of cases that Mr. Sinkard relies on heavily in his brief. The problem for Mr. Sinkard is that his case is the second type of error, an error in calculation that didn't actually affect the guidelines range. The court calculated the offense level to be 43. The offense level was 43. The court calculated the criminal history category to be 2. The criminal history category was 2. In that second category of cases, this court has found that those types of errors are harmless. The only rung that Mr. Sinkard has left to grab onto is this idea that the government's advocacy somehow changes that calculation in this case or changes that calculus. And the only case that they cite in support of that is Irvin, which is distinguishable readily because here, the government was making a point among many about why Mr. Sinkard deserved a life sentence, the heinousness of the conduct, what he put the victim through, etc. In Irvin, it was the evidence that was erroneously admitted and shown to the jury was a linchpin of the government's case. The government not only advocated for it, but the government said, we want that piece of evidence to be a roadmap for the jury when they go back and view all the other pieces of evidence. So this case is not Irvin. And the government's points that this was someone who was more dangerous than most defendants with the same guideline range would have been true regardless of whether he had 48 unadjusted points or 46 unadjusted points. And the government's point that he was especially unrepentant would have been the same regardless of that two-level enhancement for using a computer. I also do want to circle back to what Judge Phillips asked about cases where there was a motion for variance pending. And so we've got a guidelines calculation error that doesn't affect the guideline range, but nevertheless, there's this possibility that maybe the court would have varied. In addition to the Serrato case, which my colleague referenced, that was a case where there was a variance and actually the court did vary downward from the guidelines range. And he made the argument on appeal that perhaps the court would have varied down further if the court hadn't made that non-guidelines determinative calculation error. And that court, that was this court in 2014, said that at best this is pure speculation. And that's 742 Fed Third at page 469. The other case I would point to is one that we briefed, which is the Faulkner case from the Sixth Circuit. That was a case where there was an allegation that there was an improper calculation that also wouldn't have affected the guidelines range, which like in this case was life. So Mr. Faulkner would have faced life with the calculation error and without the calculation error. And Mr. Faulkner moved for a variance. The court did grant a variance. And like the defendant in Serrato, Mr. Faulkner said maybe the court would have granted a larger variance if not for this calculation error. And the court, like this court in Serrato, said that's pure speculation. And the reason that the court usually says that is because it's especially true when the error or the asserted error is not relevant to the stated basis or the stated bases for the variance. And that's true in this had nothing to do with the two-point enhancement under 283.1b6b or the fact that Mr. Sleek used, or Mr. Sleek, Mr. Slinkard used a computer. The stated purposes for the, for a variance were he's already serving time on his state sentences, his age is 42 and he was 30 at the time of the offenses, and he's got health issues. And the court considered all of those factors and stated those factors in laying out the 3553a factors in this case. So it's more than speculated in this case that the court would have sentenced differently if not for this non-guidelines determinative error. And then just briefly on the criminal history point, the plain error argument that Mr. Sleekard makes, there was no error with regard to the calculation of Mr. Sleekard's criminal history. The court, and again I go back to Judge Phillips comments, I agree that this was a stray comment. The court correctly calculated the criminal history category and not only that, but when ruling on another objection that Mr. Sleekard had made, the court differentiated between the Mays County conviction and the Tulsa County conviction, saying well you also don't get an offset for that conviction because that conviction is related to the present case. There's no reason to say it that way unless what you're indicating is that you know that the one you're not talking about is unrelated to the instant case. So the court, what the court should have said is that in addition to SS, Mr. Sleekard has molested two other children, not that there were two prior convictions. And if the court had said in calculating the offense level, I find there are two prior convictions, that would have been an error that would have been guidelines determinative. Here it didn't affect the sentence imposed, it didn't affect the guidelines that the court used, and any argument that it would have affected a motion for a variance is speculative based on this court's case law and case law from other circuits. If there are no additional questions, the government would ask this court to affirm. Your Honor, I'd just like to make two related points. You know first, I think the government is again misstating the record as it did below when it says the district court, or is exaggerating when he says the district court distinguished the Tulsa County from the Mays County priors. The district court did deny that objection. He never talks about the Tulsa County conviction at all. He's reading verbatim from the pre-sentence report. Second, just to return to Serrato, which I continue to believe supports my argument and not the government's. In Serrato, this court found the error harmless because the factors on which the variants were based remain the same regardless of whether the importation enhancement was applied. Here, the government's arguments against the variance would have changed but for the error. The government would not have been able to say he has 48 levels, therefore he's worse than everyone else. Some of the arguments would have remained the same, and I understand the government continues to believe that Mr. Slingard is someone who deserves a life sentence, but this court frequently deals with cases of procedural sentencing error where the sentence is based on a combination of improper factors and where the guidelines range doesn't change. In those circumstances, this court remands for re-sentencing because it cannot be sure that the improper factor was not part or was not a basis for the sentence. For that reason, we'd ask you to vacate and remand for re-sentencing. Thank you. Very well. Thank you. Thank you, counsel, for your arguments. The case is submitted. Thank you.